```
 1
 2
 3
 4
 5
 6
 7
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN R. KECK, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of the <br> Social Security Administration, <br><br> Defendant. | Case No. CV 09-5495 PJW <br><br> MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying his applications for Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred in: (1) evaluating the medical evidence and failing to provide valid reasons for rejecting the opinions of Plaintiff's treating physicians; (2) determining Plaintiff's residual functional capacity; (3) discrediting Plaintiff's testimony; (4) failing to address Plaintiff's sister's testimony; and (5) presenting an incomplete and inaccurate hypothetical question to the vocational expert. (Joint Stip. at 4.)

For the reasons explained below, the Court concludes that the ALJ erred and that remand is required for further consideration.[1]

## II. BACKGROUND

On February 23, 2007, Plaintiff applied for DIB and SSI, claiming that he had been disabled since October 15, 2006, due to "neck injury and possibly head injury, chronic headache." (Administrative Record ("AR") 98-102, 114, 119.) The Agency denied the applications initially and on reconsideration. (AR 53-54, 57-61, 62, 65-69.) Plaintiff then requested and was granted a hearing before an ALJ. (AR 71, 74-77.) On February 25, 2009, Plaintiff appeared at the hearing with counsel and testified. (AR 25-52.) On March 23, 2009, the ALJ issued a decision denying the application. (AR 12-23.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-4.) Plaintiff then filed the instant action.

## III. ANALYSIS

A. <u>The Treating and Examining Doctors' Opinions</u>

Plaintiff raises several related claims challenging the ALJ's analysis of the medical evidence. Primarily, he contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of treating osteopath Adam Sherman, treating psychologist Karen Parker-Anderson, and examining doctor A. Liceaga, all of whom concluded that Plaintiff had functional limitations that prevented him from working. (Joint Stip. at 38, 40-42.) He also contends that the ALJ failed to provide any reasons at all for not crediting the opinion of treating doctor Steven Barr, who found that Plaintiff was severely

---

[1] The Court has presented Plaintiff's claims in the order that it will address them herein. It is not the same order that Plaintiff presented them in the Joint Stipulation.

limited in his ability to function. (Joint Stip. at 18, 37-38.) For the following reasons, the Court agrees with Plaintiff that the ALJ's analysis of the medical evidence was inadequate and that remand is required.

In 1995, Plaintiff fell 22 feet from scaffolding while working as a carpenter. (AR 320.) Though he continued to work as a carpenter through October 2006, he began seeing Dr. Adam Sherman, an osteopath, on a monthly basis beginning in May 2002. (AR 119, 271.) Some seventy pages of clinical notes provided by Dr. Sherman show that Plaintiff continued to complain, for years, of chronic neck and cervical pain, depression, and anxiety, for which he was prescribed Diazepam, Norco, Effexor, and Wellbutrin, among other medications. (AR 218-71.) On November 26, 2003, for example, Dr. Sherman noted that Plaintiff responded well to antidepressants, but that Norco, a narcotic analgesic similar to Vicodin, was less effective at that time. (AR 251.) Dr. Sherman also noted on several occasions that Plaintiff had been receiving massage therapy. (AR 242, 248, 249.) In January 2006, Dr. Sherman noted that Plaintiff had been seeing a chiropractor. (AR 221.)

On September 25, 2007, Dr. Sherman completed a "Headaches Residual Functional Capacity Questionnaire," in which he concluded that Plaintiff suffered from chronic headaches, chronic cervical pain, and cervical degenerative disc disease, as well as obesity, cervical radiculopathy, and anxiety. (AR 347.) Dr. Sherman noted that Plaintiff suffered constantly from headaches, which were triggered and exacerbated by bright lights, noise, and activity, and alleviated by cold and hot packs, massage, and lying in a dark room. (AR 347-48.) Dr. Sherman determined that Plaintiff was not malingering, that Norco

3

had given him some relief but that his pain was still present, and that his prognosis was "fair to poor." (AR 349.) In Dr. Sherman's view, Plaintiff's headaches would require him to take unscheduled breaks every hour, miss work more than four times a month, and preclude him from working at even a low-stress job. (AR 350.) Dr. Sherman submitted another evaluation containing almost identical findings on February 17, 2009. (AR 505-09.)

Between June 2007 and February 2008, Plaintiff received treatment at the West Ventura Medical Clinic. A June 9, 2007 note signed by Dr. Robert Chandler stated that Plaintiff's pain had caused him to go to the emergency room, where he was given pain medication. (AR 451.) Dr. Chandler noted that Plaintiff was tender along the occipital ridge bilaterally. (AR 451.)

On June 11, 2007, Dr. Steven Barr saw Plaintiff for chronic neck pain. (AR 357.) On August 9, 2007, Dr. Barr noted that he had referred Plaintiff for an epidural, but that the anesthesiologist who was to have administered the epidural had explained that Plaintiff required an occipital nerve block, instead. (AR 449.) Dr. Barr also noted that an EMG was positive for C6 radiculopathy. (AR 449.) On August 27, 2007, an MRI of the cervical spine was performed, which indicated some foramina narrowing at C2-3, C3-4, C4-5, and C5-6. (AR 521.) On October 1, 2007, Dr. Barr diagnosed Plaintiff with occipital neuralgia, carpal tunnel syndrome, and cervical radiculopathy. (AR 353.)

In a check-the-box form dated October 1, 2007, Dr. Barr indicated that Plaintiff could occasionally lift no more than 20 pounds and frequently lift no more than ten pounds; could stand or walk less than two hours, and sit less than six hours, in an eight-hour day; and was

4

severely limited in pushing or pulling with his hands and arms. (AR 368.) In a February 22, 2008 note, Dr. Barr stated that an occipital nerve injection had not helped Plaintiff, and that he was taking 300mg of gabapentin at night, which made him feel groggy in the morning. (AR 511.)

On August 31, 2007, Plaintiff saw Dr. A. Liceaga, a pain management specialist. (AR 455-56.) Dr. Liceaga noted that medications, chiropractic, and acupuncture had all been "somewhat palliative" for Plaintiff's condition, but that his pain continued to be chronic. (AR 455.) He noted that Plaintiff was taking six tablets a day of Norco. (AR 455.) Upon examination, Dr. Liceaga noted that Plaintiff's occipital and upper cervical regions were tender, and that his range of motion was restricted. (AR 456.) He diagnosed status post anterior cervical fusion, cervicalgia, occipital neuralgia, cervicogenic headaches, myofascial pain/spasm, and exogenous depression due to chronic pain. (AR 456.) He opined that Plaintiff's chronic severe pain rendered him permanently disabled and recommended a combination of medication and "specific diagnostic injection trials." (AR 456.)

Plaintiff saw psychologist Karen Parker-Anderson for an initial evaluation on January 18, 2008, and thereafter for twice-monthly sessions through August 2008, after which treatment was suspended because of Plaintiff's financial constraints. (AR 379-90, 525.) In a "mental impairment questionnaire" that she completed on February 12, 2009, Dr. Parker-Anderson diagnosed Plaintiff with major depressive disorder, single episode, severe, and noted that he also suffered from chronic pain that rendered him unable to work. (AR 525.) She noted that he was depressed, that he had a negative outlook and low esteem,

and that his subjective complaints were substantiated by her objective findings. (AR 526.) She opined that he would be absent due to his mental impairments more than three times a month. (AR 528.) She also determined that Plaintiff had "poor or no[ ]" ability to maintain regular attendance and be punctual, or to complete a normal workweek without interruption; and that he had no better than "fair" ability to understand and carry out instructions, work and get along with others, make decisions, ask questions, and respond to criticism and changes in the workplace. (AR 529-30.) Dr. Parker-Anderson also opined that Plaintiff would be markedly limited in maintaining social functioning, concentration, and persistence or pace, and would suffer from repeated episodes of deterioration or decompensation. (AR 531.)

In her March 23, 2009 decision, the ALJ summarized some of the records and opinions submitted by these doctors and summarily concluded:

> The medical opinions of Drs. Sherman, Liceaga, and Anderson that [Plaintiff] is disabled are not supported by the objective findings, and the ultimate issue of disability is reserved to the Commissioner of Social Security based upon criteria discussed above.

(AR 20.)

This was the sum and substance of the ALJ's discussion of the treating doctors' opinions. The ALJ did not specifically credit or discredit Dr. Barr's opinion regarding Plaintiff's functional limitations, though her residual functional capacity determination, as

set forth below, is plainly less restrictive than that found by Dr. Barr.[2]

"By rule, the [Agency] favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Thus, a treating physician's opinion that is well-supported and not inconsistent with the other substantial evidence in the record will be given controlling weight. *Id.* Where the treating opinion is inconsistent with other substantial evidence, it is still entitled to deference. *Id.* at 632. "Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).

The ALJ provided only two reasons for rejecting the treating doctors' opinions: 1) they were "not supported by the objective findings"; and 2) the ultimate issue of disability is reserved to the agency. (AR 20.) Neither of these reasons is sufficient to support the ALJ's rejection of the doctors' opinions.

First, the ALJ's bare assertion that the opinions are not supported by the objective findings has been specifically rejected as a valid reason by the circuit court. *Regennitter v. Comm'r, Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999). In *Regennitter*, the Ninth Circuit explained:

---

[2] As further discussed below, the ALJ found that the opinions of examining neurologists Jeffrey Leonard and Hsien Young, state agency reviewing physician T. Nguyen, and consultative psychiatrist Jason Yang, were "fully credible[.]" (AR 19, 20.)

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

166 F.3d at 1299 (quoting *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988) (quotation marks omitted).

Here, the ALJ did not identify what "objective findings" she believed undermined the treating doctors' opinions. Even if she believed that the examining doctor's and reviewing doctor's opinions constituted such objective findings, she was still obligated to explain what those findings were and how they contradicted the treating doctors' findings. *See Orn*, 495 F.3d at 632-33; *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882, 884-85 (9th Cir. 2006) (noting that "the complete lack of meaningful explanation gives this court nothing with which to assess [the] legitimacy" of the ALJ's determination). Moreover, the ALJ erred in failing to offer any reason for rejecting Dr. Barr's opinion, which she was required to do.

The second reason offered by the ALJ for rejecting the treating doctors' opinions was that they contained opinions regarding the ultimate issue of disability, which, as the ALJ noted, is left to the ALJ. Though the Court would agree that the ALJ was not bound to accept the treating physicians' conclusions that Plaintiff was disabled, *see Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (reaffirming that treating physician's opinion is "not

binding on an ALJ with respect to the . . . ultimate determination of disability."); 20 C.F.R. § 404.1527(e)(3), that does not mean that she could reject the rest of their opinions--which did not go to that issue--for this reason.

In the end, the Court concludes that the ALJ did not provide legally sufficient reasons for rejecting the treating doctors' opinions and, therefore, the case must be remanded for reconsideration of this issue. On remand, the ALJ should re-evaluate the doctors' opinions and set for the specific reasons why she is accepting one doctor's opinion over another's.

B. The Residual Functional Capacity Determination

Plaintiff contends that the ALJ's residual functional capacity determination was not supported by the record because it did not account for the limitations found by his treating doctors. (Joint Stip. at 11-25.) He also argues that the ALJ's functional determination was inconsistent with the limitations found by Dr. Young and Dr. Nguyen, upon whom the ALJ purportedly relied. (Joint Stip. at 14-15, 19.) For the following reasons, the Court concludes that this issue must be revisited on remand also.

The responsibility for deciding a claimant's residual functional capacity is reserved to the Agency. 20 C.F.R. § 404.927(e)(2). Even so, "a [residual functional capacity assessment] that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

The ALJ determined at step two that Plaintiff had severe impairments consisting of migraine headaches/occipital neuralgia; history of cervical fusion with multi-level degenerative changes with cervical radiculopathy; major depressive disorder; and history of

cocaine and alcohol dependence, in sustained remission. (AR 17.) The ALJ determined at step four that Plaintiff could perform light work, but would be limited to lifting or carrying 20 pounds frequently and 40 pounds occasionally; no more than occasional pushing or pulling with his hands and arms; no more than occasional climbing and crawling; and precluded from work requiring him to extend his neck "at end range of motion," reach overhead with his arms or hands, or climb ropes or ladders. (AR 18.) The ALJ also found that Plaintiff could not perform semi-skilled or skilled work. (AR 18.)

As set forth above, Plaintiff's treating doctors found that he was more severely limited than the ALJ. For example, both Dr. Sherman and Dr. Barr opined that Plaintiff could stand or walk for no more than two hours in an eight-hour day. (AR 368, 460.) And Dr. Parker-Anderson opined that Plaintiff was "markedly" limited in his ability to function in the workplace. (AR 444.) Because the Court finds that the ALJ did not provide adequate reasons for rejecting these opinions, it follows that the ALJ's residual functional capacity determination, which essentially disregarded these opinions, was flawed.

The Court also separately concludes that the ALJ's residual functional capacity determination requires further explanation. Though the ALJ found that examining neurologist Hsien Young's opinion and, thus, presumably, his functional limitations findings, was "fully credible," (AR 20), the ALJ did not adopt all of the limitations found by Dr. Young. As Plaintiff points out, Dr. Young found that Plaintiff would need additional breaks due to his chronic neck pain, (AR 324), but no such requirement was included in the ALJ's residual functional capacity assessment. Additionally, the ALJ did not explain why she accepted Dr. Young's findings--that Plaintiff could lift or carry up

to 20 pounds frequently and 40 pounds occasionally (AR 324)--over reviewing physician Dr. Nguyen's findings--that Plaintiff could lift no more than 20 pounds frequently and ten pounds occasionally (AR 326)--even though she claimed to find both fully credible. (AR 20.)

In a similar vein, the ALJ found, without providing an explanation, that Plaintiff would be precluded from all semi-skilled and skilled work. (AR 18.) This appears to conflict with the opinion of consultative psychiatrist Dr. Jason Yang, to which the ALJ purportedly gave great weight, who determined that Plaintiff could follow one- and two-part instructions, remember and complete simple and complex tasks, tolerate stress, maintain regular attendance, work without supervision, and interact appropriately with supervisors, coworkers, and the public. (AR 20, 301.) Such ambiguities leave the Court guessing what evidence the ALJ relied on to support her decision. On remand, the ALJ must make a new residual functional capacity determination and explain her reasoning behind it.[3]

C. **Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to provide adequate reasons for discounting his testimony regarding the pain and other symptoms he claims to experience. (Joint Stip. at 43-46.) For the reasons explained below, this issue must also be readdressed on remand.

ALJ's are tasked with judging the credibility of witnesses. In making a credibility determination, an ALJ may take into account

---

[3] Plaintiff also argues that the ALJ failed to include all of the functional limitations, both severe and non-severe, supported by the record. (Joint Stip. at 22-25.) The ALJ should consider this issue as well in addressing the medical evidence.

11

ordinary credibility evaluation techniques. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Where, as here, the ALJ accepted that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged and apparently found no evidence of malingering, (AR 21), the ALJ could only reject his testimony for specific, clear, and convincing reasons. *Smolen*, 80 F.3d at 1283-84.

The ALJ noted that the "primary basis on which disability is alleged is disabling pain." (AR 20.) The ALJ then found that Plaintiff's subjective symptom testimony was not credible to the extent that it was inconsistent with her residual functional capacity assessment. (AR 21.) Because, as set forth above, the Court concludes that the ALJ erred in her analysis of the treating doctors' opinions, and that this error, and others, undermined the residual functional capacity assessment, the ALJ will need to revisit the credibility determination too.[4]

D. <u>Testimony of Plaintiff's Sister</u>

Plaintiff contends that the ALJ failed to address the written testimony of his sister, Cherice Keck, or provide reasons for rejecting her testimony. (Joint Stip. at 4-7.) The Court agrees.

Plaintiff's sister provided a written statement, dated March 31, 2007, in which she reported that she sees Plaintiff daily and that he continues to do household chores, with assistance from his son, but

---

[4] The Court notes that the ALJ concluded that Plaintiff had received only "limited and conservative treatment" for his allegedly-disabling pain. (AR 21.) It seems that this finding is inconsistent with the fact that Plaintiff had been prescribed numerous narcotic pain relievers, including Vicodin and Norco, and had received a variety of treatment, such as massage therapy, acupuncture, and chiropractic, to treat his pain.

12

finds them difficult; that his headaches make social interaction "unbearable" for him; and that he finds various activities such as lifting, standing, reaching, or concentrating difficult. (AR 128-33.) The ALJ did not mention the sister's statement in her decision.

An ALJ is required to consider statements of lay witnesses, whether these statements are made at the administrative hearing or submitted in writing before the hearing. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (holding that ALJ must give germane reasons to discount written testimony and affidavits of lay witnesses). Failure to consider such "testimony" constitutes error. *Stout*, 454 F.3d at 1055-56. Plaintiff's sister submitted written testimony; the ALJ failed to mention it in his decision. This was error. *Id.*; see also *Robbins*, 466 F.3d at 885.

The issue left for the Court to decide is whether the error was harmless. In this context, an error is harmless if the Court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. The Court cannot do so here. Assuming that the ALJ fully credited the sister's statement that Plaintiff found most physical activities laborious or impossible and social interaction unbearable, it seems clear that a reasonable ALJ could have concluded that Plaintiff was unable to work. Thus, remand on this issue is necessary.[5]

---

[5] The Agency contends that Ms. Keck "merely recited a list of Plaintiff's own subjective complaints." (Joint Stip. at 8.) It argues that the Court can independently infer from the record reasons why the ALJ might have rejected her statements. (Joint Stip. at 8.) The Court rejects this argument. The Court must fully credit the

E. <u>Failure to Present Complete Hypothetical Question</u>

Finally, Plaintiff contends that the ALJ posed an incomplete hypothetical question to the vocational expert. (Joint Stip. at 35.) Given the Court's rulings on the above issues, the ALJ may need to change the residual functional capacity finding on remand and may then need to pose a new hypothetical question to the vocational expert.

F. <u>Plaintiff's Request For An Award Of Benefits</u>

Plaintiff seeks reversal for an award of benefits. (Joint Stip. at 62). The decision whether to reverse for an award of benefits or to remand for further proceedings is within this Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1177-1178 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, the Court can remand with instructions to award benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). Where, as here, however, there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that Plaintiff is entitled to benefits, remand for further proceedings is appropriate. *Id.* at 1180-81; *see also Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003).

---

sister's testimony and determine whether the ALJ's decision can still stand. *Stout*, 454 F.3d at 1056. In addition, the Court may only affirm an ALJ's decision for the reasons she set forth in her decision. *See, e.g.*, *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). Thus, the Agency's arguments here are foreclosed by controlling authority.

## IV. CONCLUSION

For these reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

DATED: August 20, 2010.

*Patrick J. Walsh*
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\KECK\Memo_Opinion.wpd